IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL J. HATHORN                                                                    PLAINTIFF

v.                            Civil No.   14-5031

DR. NEIL MULLINS; NURSE
RHONDA BRADLEY; and
SHERIFF TIM HELDER                                                                    DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

The Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of Correction (ADC). The events that are the subject of this case occurred while Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff contends his constitutional rights were violated when the Defendants were deliberately indifferent to his serious medical needs.

Defendants have filed a Motion for Summary Judgment (Doc. 19). Plaintiff requested the Court's assistance in responding to the Motion by preparation of a questionnaire. One was prepared and sent to the Plaintiff (Doc. 27). Plaintiff has filed his Response (Doc. 28). The motion is ready for decision.

### 1. Background

Plaintiff was booked into the WCDC on November 20, 2013. *Plaintiff's Response, Doc. 28)*(hereinafter *Resp.*) at ¶ 1(A). He remained incarcerated there until April 3, 2014, when he was transported to the ADC. *Id.* at ¶ 1(B).

Plaintiff submitted his first sick call request on November 23rd. *Resp.* at ¶ 3(A). He complained of numbness, burning, tingling, and pain in his hands. *Id.* at ¶ 3(B). Plaintiff complained of bilateral numbness in his fingertips. *Id.* at ¶ 19(B). He was barely able to pick a

coin off the floor. *Id.* at ¶ 19(C). He first began experiencing the numbness on November 22nd or 23rd. *Id.* at ¶ 19(D).

He was seen by Dr. Mullins on the 25th. *Resp.* at ¶ 4(A). Dr. Mullins ordered an x-ray of Plaintiff's neck and some blood work. *Id.* at ¶ 4(B). Dr. Mullins also prescribed Ibuprofen. *Id.* at ¶ 4(C).

Plaintiff was transported on December 15th for the x-ray but he did not have an appointment and was refused. *Resp.* at ¶¶ 8(A)-(B). According to Plaintiff, the x-ray was not taken until January 22, 2014. *Id.* at ¶ 4(D). Plaintiff asserts that Dr. Mullins said that "2 weeks was [too] long to go without them being done." *Id.* at ¶ 4(D). In his response, Plaintiff states he believes Defendants delayed in providing him the x-ray because of the cost. *Id.* at ¶ 9.

The blood work was done. *Resp.* at ¶ 4(E). However, Plaintiff maintains the doctor ordered blood work on a second occasion and it was not done. *Id.*

Plaintiff put in another sick call request on December 6, 2013. *Resp.* at ¶ 5. He was seen by Dr. Mullins on December 9th and given Ibuprofen. *Id.* at ¶¶ 6-7.

After he reviewed the x-ray, Dr. Mullins prescribed Neurontin. *Resp.* at ¶ 13; *Defts' Ex.* A at 27. Plaintiff states this occurred sometime in mid-March 2014 after Dr. Mullins was served with this lawsuit.[1] *Resp.* at ¶ 14. The Neurontin worked "to a point." *Id.* at ¶ 19(A).

Plaintiff was seen by Dr. Mullins on November 25, 2013, December 9, 2013, February 4, 2014, and March 4, 2014. *Resp.* at ¶ 16. He was also seen by Dr. Howard in November of 2013, on March 11, 2014, and on March 25, 2014. *Id.* at ¶ 17.

On March 4, 2014, Dr. Mullins requested a neurology consult but Plaintiff was transferred before the consult occurred. *Resp.* at ¶ 18. A doctor at the ADC increased Plaintiff's dose of Neurontin. *Id.* at ¶ 20. When his deposition was taken on May 5, 2014, the only

---

[1] According to the docket sheet, the order of service was entered on March 6, 2014 (Doc. 7). The return of service (Doc. 12) shows Dr. Mullins was served on March 24, 2014.

AO72A
(Rev. 8/82)

medication he was on was Neurontin. *Id.* at ¶ 21. He was assigned to work as a field utility worker in the ADC. *Id.* at ¶ 22.

The ADC doctor felt Plaintiff should receive an MRI. *Resp.* at ¶ 24. Plaintiff had an MRI and he states it showed deteriorated discs and bone and pinched nerves. *Id.* at ¶ 25.

Plaintiff was asked how he believed Dr. Mullins was deliberately indifferent to his serious medical needs. Plaintiff responded:

> I think I need more treatment and he was trying to avoid cost. I was left in pain and they/he only wanted to do anything after he was served. My ADC number is a thousand numbers off from any one that I was ship[p]ed to ADC with. I believe it was so they did not have to pay for treatment.

*Resp.* at ¶ 26.

Plaintiff was asked how Nurse Bradley was deliberately indifferent to his serious medical needs. He responded: "All she was concerned with is cost and told me I was not in that much pain." *Resp.* at ¶ 27.

Plaintiff was asked how Sheriff Helder was deliberately to his serious medical needs. He responded: "I believe that with all the medical lawsuit[s] filed he had to know about inadequ[ate] medical care. He runs the jail and should have been doing som[e]thing about it." *Resp.* at ¶ 28(A). Plaintiff never personally spoke to, or communicated with, Sheriff Helder. *Id.* at ¶ 28(B). He believes Sheriff Helder should be held liable because "[h]e is [their] boss or at least respons[i]ble for the jail. With the amount of law suit[s there has] got to be som[e]thing to. He should have looked into it better." *Id.*

## 2. Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendants maintain they are entitled to summary judgment for the following reasons: (1) there is no proof of any denial of medical care or of a detrimental effect with respect to Plaintiff's medical condition attributable to any delay in the receipt of medical care; (2) Sheriff Helder was not personally involved in the provision of medical care; and (3) there is no proof of any unconstitutional policy, custom, or practice to hold Defendants liable in their official capacities.

"Under the Eighth Amendment's proscription against cruel and unusual punishments, prison officials must provide medical care to inmates." *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008)(internal quotation marks and citation omitted). "A prison's medical staff violates the Eighth Amendment if they commit acts or omissions sufficiently harmful to evidence

deliberate indifference to [an inmate's] serious medical needs." *Meuir v. Green County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007)(internal quotation marks and citation omitted).

To establish a prima facie case, Plaintiff must demonstrate that: (1) he suffered from an objectively serious medical need; and (2) Defendants actually knew of, but deliberately disregarded, that need. *Id.*

The decision of what diagnostic tests are necessary is one ordinarily left to the judgment of medical personnel. *See e.g., Estelle v. Gamble*, 429 U.S. 97, 107 (1976). In this case, although it was delayed, an x-ray taken was and reviewed by Dr. Mullins. Plaintiff alleges he should have receiving more treatment but the decision of what medical tests should be run and what medications should be prescribed involves the exercise of professional judgment and does not constitute deliberate indifference. *See e.g., Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996)(prison officials do not violate Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement inmate's requested course of treatment). I note that Plaintiff was started on the same medication, Neurontin, that he remained on at the ADC.

Furthermore, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citation omitted). Plaintiff has presented no evidence that any delay attributable to the medical Defendants adversely impacted his prognosis.

With respect to Sheriff Helder, liability under § 1983 requires some personal or direct involvement in the alleged unconstitutional action. *See e.g., Ripon v. Ales*, 21 F.3d 805, 808-09 (8th Cir. 1994). There is nothing in the summary judgment record that suggests that Sheriff

AO72A
(Rev. 8/82)

Helder was involved in the provision of medical care to inmates. *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility). General responsibility for supervising the WCDC is insufficient to establish personal involvement. *Reynolds v. Dormice*, 636 F.3d 976, 981 (8th Cir. 2011). Sheriff Helder is entitled to summary judgment on the individual capacity claim.

This leaves the official capacity claims. "[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Washington County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

Id. at 817-18.

Here, Plaintiff has made no showing of the existence of an unconstitutional county policy or custom. Even if Plaintiff should have underwent additional medical testing, their refusal merely constitutes an exercise in medical judgment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)(inmates have no constitutional right to a particular course of treatment, and medical staff remain free to use their independent medical judgment). Clearly, Plaintiff's allegations are insufficient to establish the existence of an unconstitutional policy or custom.

### 4. Conclusion

For the reasons stated, I recommend that the Defendants' Motion for Summary Judgment (Doc. 19) be **GRANTED** and this case **DISMISSED with PREJUDICE**.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 17th day of February, 2015.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)